ARKANSAS DEPARTMENT OF HUMAN SERVICES
*v.* Dierdre CLARK, et al.

90-316                                    802 S.W.2d 461

Supreme Court of Arkansas
Opinion delivered January 28, 1991

*Stephen C. Sipes*, Chief Counsel, for appellant.

*Central Arkansas Legal Services*, by: *Griffin J. Stockley*, for appellee.

DONALD L. CORBIN, Justice. The Arkansas Department of Human Services (hereinafter referred to as DHS) appeals from a May 1, 1990, Order of the Juvenile Division of the Pulaski County Chancery Court. The May 1 Order directed DHS to take various actions with respect to appellees Dierdre Clark and her two sons. DHS asserts two points of error in the May 1 Order. As we are not persuaded that the juvenile court erred, we affirm.

The juvenile court took jurisdiction of this case on December 16, 1988, when Dierdre Clark contacted Pulaski County Children and Family Services, a division of DHS, and stated she wanted to place her two children, Jonathan and Joseph, for adoption. At that time Joseph was one month short of his sixth birthday and Jonathan was two weeks away from his third. In an emergency order entered December 16, 1988, the court found the boys to be dependent children and removed them from the custody of their mother. The boys were placed in foster care and remained there for the next thirteen months. Subsequent to the December 16 hearing Ms. Clark contacted DHS staff and stated that she changed her mind and wished to work toward stabilizing her life circumstances so as to resume custody of the boys. During the period the boys were in foster care they both attended counseling sessions at the University of Arkansas Medical Center and Ms. Clark received counseling from a certified social worker at the Community Mental Health Center. Ms. Clark was diagnosed as having dysthymia, a chronic mental illness for which the medication Prozac was prescribed.

At a January 11, 1990, hearing Carol Balmaz, the assigned caseworker from Pulaski County Children and Family Services, submitted a report in which she recommended the children be

returned to the custody of their mother. The children were returned by an order of the court filed that same day. An order entered February 20, 1990, included the findings and orders of the January 11 hearing. This order directed that a program of counseling be initiated for the children and their mother through Centers for Youth and Families, Elizabeth Mitchell Children's Center; that Ms. Clark maintain both her prescribed medication therapy and her contact with her community mental health case manager; that DHS staff calculate Ms. Clark's total present economic need under existing agency policy; and that DHS maintain a services case with the family and provide transportation assistance to the family to facilitate the children's counseling. The order continued jurisdiction of the cause and scheduled further review for April 5, 1990.

Following a hearing held April 5, the court entered the Order of May 1, 1990, from which this appeal is taken. In this order the court left custody of the two juveniles with their mother; noted that although DHS provided reasonable services, the majority of the casework services were provided by the community mental health therapist rather than the assigned caseworker from the division of Children and Family Services; directed DHS to pay for medication which was prescribed for the mother but not included on the Medicaid listings for reimbursement; directed DHS to provide transportation in the form of bus tokens or bus credits each month for each individual family member; directed DHS to transport the mother to community agencies or individuals that provide food; found that continued financial problems existed for the family; ordered DHS to provide the remainder of the full entitlement of preventive funds to the mother; and continued jurisdiction of the cause.

Appellant raises the following points for reversal: 1) the court erred when it specifically found that DHS did not provide transportation as ordered by the court in the previous court order and determined that DHS did not provide reasonable efforts at services; and 2) the court erred when it ordered DHS to make cash disbursements in violation of administrative agency policy and in excess of allocated funding.

In support of its first point appellant argues that the court's finding regarding transportation and reasonable efforts is a factual finding that is not supported by the evidence. This argument is premised on a finding that simply does not exist. That portion of the order to which appellant refers is as follows:

> 5. The Court notes from the outset that the Department of Human Services have [sic] provided reasonable services in that the Community Mental Health Therapist, Lynn Pierce, has provided counseling and therapy to the mother, rehabilitation referral, application for SSI benefits, referral for parenting classes, and has transported the mother for purposes of obtaining food, appointments and other necessities. However, the Court further notes that the Department of Human Services did not provide reasonable efforts at services in that the majority of the case work services were provided by Ms. Pierce, rather than the assigned caseworker in this matter, who made referrals for financial services and parenting classes only.

In this finding the juvenile judge merely states that the services were provided by the community mental health therapist rather than the assigned caseworker from Children and Family Services. Both the therapist and the caseworker are employees of divisions of DHS, therefore, a finding that DHS did not provide reasonable efforts or transportation simply was not made. Because there is no such finding, DHS presents no justiciable issue in its first point.

In support of its second point, DHS contends that the May 1, 1990, Order compels it to disburse cash funds from the Income Assistance Program in violation of at least two of its criteria governing disbursement of funds. Appellant also asserts that what effectively has occurred during the course of proceedings conducted pursuant to provisions of the Arkansas Juvenile Code of 1989 is a separate judicial review of an administrative agency where no independent judicial action or review may lie. We disagree.

Following the passage of Amendment 67 to the Arkansas Constitution, the 77th General Assembly in Act 294 of 1989 defined jurisdiction of matters relating to juveniles and conferred such jurisdiction upon a newly created juvenile division of chancery court. DHS, the administrative agency primarily responsible for dealing with children and families, was also created by an act of the General Assembly. There is no clear delineation of the relationship of these two creatures of statute.

■ The jurisdictions of the juvenile court and DHS overlap in numerous and varied areas. One such area involves family services, which is defined in the Juvenile Code at Ark. Code Ann. § 9-27-303(17) (Supp. 1989) as:

> "Family services" means relevant services, including, but not limited to: child care; homemaker services; crisis counseling; cash assistance; transportation; family therapy; physical, psychiatric, or psychological evaluation; counseling; or treatment, provided to a juvenile or his family. Family services are provided in order to:

> (A) Prevent a juvenile from being removed from a parent,. . .[.]

Ark. Code Ann. § 9-27-328(a) (Supp. 1989) provides the juvenile court is to order family services to avoid the necessity of removing a juvenile from his home. The Juvenile Code refers to DHS as the administrative agency responsible for providing family services. While DHS promulgates and implements its policies and rules pursuant to the Administrative Procedure Act, Ark. Code Ann. §§ 25-15-201 to -214 (1987 and Supp. 1989), as it states in its brief, the "[w]ritten criteria have been developed to aid casework staff in requesting income assistance as a preventive service or a reunification service." The need for such criteria is obvious for use within the department. However, no where in the Juvenile Code is there a provision that even arguably requires the juvenile court to fashion its orders within the policy guidelines of DHS.

■ The services ordered by the court of which DHS complains, those pertaining to transportation and financial assis-

tance, are among those included in the definition of family services. Clearly the court's action here is that which it is permitted to take pursuant to Ark. Code Ann. § 9-27-328(a). Furthermore, we note that the court did not order DHS to disburse a greater amount in funds than the maximum allowable under its policies. We also note that DHS neither claimed that funds were not available, nor offered evidence of such.

■ As to the contention of DHS that the Juvenile Code in essence establishes a judicial review of an administrative agency where no review lies, we cannot agree. The Juvenile Code sets out affirmative requirements designed to achieve the purposes stated at Ark. Code Ann. § 9-27-302 (1989). Among the requirements imposed on the juvenile court are those to consider what efforts have been made, to determine if those efforts have been sufficient, and to make prospective orders based on its determinations.

Finally, we address appellant's challenge to the sufficiency of the evidence. Although we review chancery cases *de novo*, we do not reverse unless the chancellor's findings are clearly against the preponderance of the evidence. *Wilson* v. *Wilson*, 301 Ark. 80, 781 S.W.2d 487 (1990); Ark. R. Civ. P. 52.

DHS presented the following evidence at the April 5, 1990, hearing. Carol Balmaz, the assigned caseworker, testified that two months prior to that date she prepared the court report which was submitted for consideration at this hearing and included in it her recommendations (among those recommendations was one that the juvenile court terminate jurisdiction). She stated that DHS had done everything it could in the way of financial assistance, but that she thought she could provide transportation. Ms. Balmaz continued by saying that she had not talked with Ms. Clark in "maybe three weeks or a month and we have not been — she has not requested transportation." Ms. Balmaz also said that since January Ms. Clark had not requested transportation and that, although she should have been, she was not aware that a need existed.

Ms. Clark also testified at the April 5 hearing. Concerning transportation she stated that there were times when she and her

children rode the bus five to seven times a day. She said she rode it four times a day to take her son back and forth to school. As for her financial situation, Ms. Clark stated that she was behind on her rent and was running out of food again. This testimony was not disputed by DHS. In fact, the caseworker, Ms. Balmaz, testified that she did not know what Ms. Clark's situation was regarding rent and food.

■ Clearly there is evidence in the record supporting the orders of the juvenile judge concerning the family's needs. We, therefore, cannot say that the juvenile judge was clearly erroneous.

Affirmed.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. This case is the second appeal this court has received where certain services required by law have not been furnished to families. See Ark. Code Ann. § 9-27-303(17) (Supp. 1989). In both cases, the chancery judges have done their best to assure required and needed services would be given the families in the future.

In the present case, the chancellor ordered DHS to provide medication to the mother in this matter. The mother suffers from dysthymia and a borderline personality disorder and requires Prozac, an anti-depressant medication, which can be provided at a cost of $5.50 per month. The judge also directed DHS to provide the mother and her two children with bus tokens so the family could make their required counseling sessions. Such transportation could be provided at a cost of $36.00 per month.

In my view, DHS's decision to appeal the chancellor's order in this case is not only meritless, but incredulous as well. DHS concedes this family has failed to receive even the small $800.00 per year amount it, by its own policy, has deemed to be the maximum available financial assistance this family could receive from certain so-called "preventive funds." Without her medication, the mother in this case could well have a relapse which would in turn jeopardize her ability to care for the children. Without

transportation, she and her children are left with the inability to obtain counseling, which is part of the case plan established by DHS. Both the medication and transportation can be provided for a total sum of $41.50 per month.

The mother in this case has made substantial improvements which have rewarded her the return of her children by the court. If she fails to continue her progress because of no medication and transportation and, as a result, her children are returned to foster care, this state's economic burden will far exceed the disputed costs in this case. The judge in this matter was patient and thorough, and I agree with the majority that her order clearly should be affirmed. DHS's energies would be better placed if it spent its time and efforts in trying to meet the needs and services required by families, such as the one here, than in challenging entitlements from preventive funds which are clearly within DHS's authority to pay. This mother, who donates plasma to meet her monthly rent, surely is entitled to better treatment than what she has received in this case.

In conclusion, I would add that the chancellor noted that she had some difficulty in determining who, in DHS, was accountable for assuring this family received the required services. The judge looked to the caseworker for DHS/DCFS. However, that caseworker conceded that because of her caseload, she was unable to do the needed work on this family's case. The caseworker further testified that another DHS official, Billye Burke, has the purse strings and nothing could be done without her approval. Here, Burke apparently decided no more preventive funds should go to this family. No explanation was given for the cutting off of these funds even though the maximum entitlement amount had not been reached. And finally, a third person, a social worker and employee of Mental Health Center, was assigned to and assisted this family. While this social worker said that she did what she could for the family, she related the services that were not forthcoming, stating as follows: "I would like for her [the mother] to get all the resources that she needs so that she can get on with the business of parenting and living her life, with her training, where she can eventually get off of assistance. She wants to do that and that's positive."

The chancellor, too, was frustrated in assigning accountability in this matter, especially, I would think, because only $41.50 per month would have resolved the immediate needs of this family. The judge has entered her order to assure those needs are met and this court, on appeal, emphasizes that the judge has that power. No separation of powers issue exists in this case, as DHS seems to argue. Our law assures that all children brought to the attention of the courts shall receive the guidance, care, and control, preferably in the child's own home, which will best serve the emotional, mental and physical welfare of the child and the state. Ark. Code. Ann. § 9-27-302(1) (Supp. 1989). The family and children in the present case require transportation, counseling and treatment which are provided by law. Ark. Code Ann. § 9-27-303(17). When DHS and the state fail to provide those services required by law, then the judiciary's responsibility is to assure the law is complied with. That is all there is to this case. The trial judge was correct in entering her order, and this court is correct in expeditiously upholding the order.