ARKANSAS DEPARTMENT OF HUMAN SERVICES *v.*
Reuben SOUTHERLAND

CA 98-398 985 S.W.2d 336

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered February 10, 1999

*Kay West Forrest,* for appellant.

No response.

JOHN F. STROUD, JR., Judge. The juvenile division of the Jefferson County Chancery Court ordered appellant, the Arkansas Department of Human Services, to pay Reuben Southerland $3,325 as compensation for providing foster care to Charlie Smith, an eighteen-year-old foster youth, for the period June 1997 through December 1997. We reverse.

At a review hearing involving appellant and Charlie, the subject of board payments for Mr. Southerland arose. Charlie had run away from the foster home to which DHS had assigned him and moved into Mr. Southerland's house in January 1997. DHS did not learn where Charlie was until June 1997. The approval process for certification and licensing began at that time. It was undisputed that until November 1997 Mr. Southerland was not certified to provide foster care, nor was his home licensed as a foster home. DHS contended therefore that it did not "place" Charlie in Mr. Southerland's house. Rather, Charlie placed himself there and was allowed to remain there on "extended visitation" during the licensing/certification process. DHS was convinced that if Charlie were not allowed to remain in the Southerland home, he would run away again. Moreover, Mr. Southerland was certainly aware that he was not receiving board payments during this period, and, yet, according to DHS officials

one of the reasons for the delay from June until November was that he was dilatory in satisfying the licensing/certification requirements.

Following the hearing, the juvenile judge's order provided in pertinent part:

9. The next review of this case is scheduled for June 3, 1998 at 2:00 p.m. The Court at that time will consider whether or not Charlie Smith should remain in the custody of the Arkansas Department of Human Services. The Court advised Charlie Smith that in order for him to remain in the custody of the Arkansas Department of Human Services, the said Charlie Smith will have to have already applied to college by the time of the next hearing scheduled for June 3, 1998.

10. Mr. Reuben Southerland, foster parent, testified that he has had Charlie Smith in his home for many months and has not received payment from Arkansas Department of Human Services. The Court finds that Arkansas Department of Human Services shall pay Reuben Southerland a total of $3,325.00 for providing care to Charlie Smith from June, 1997 through December, 1997. This sum was arrived at by calculating 7 months of care times $475.00 which is a regular board payment. The $3,325.00 shall be paid from the regular board payment funding source and shall be received by Reuben Southerland by January 15, 1998. That in the event Mr. Reuben Southerland does not receive the said check by January 15, 1998, Mr. Southerland is directed to inform this Court by letter.

11. That in the event that Mr. Reuben Southerland does not receive the said payment of $3325.00 from ADHS by January 15, 1998, then and in that event, Mr. Boyd Ward, Assistant Director of Children and Family Services, shall [appear] before this Court on February 4, 1998, at 1:30 p.m. for a special hearing. That in the event that Mr. Reuben Southerland does receive the said check by January 15, 1998, then and in that event, Mr. Boyd Ward will not need to appear before this Court as there will be no special hearing on February 4, 1998.

12. The Court has directed Arkansas Department of Human Services to pay the sum of $3,325 to Mr. Reuben Southerland for providing care to Charlie Smith for 7 months due to the fact that Arkansas Department of Human Services

requested that Charlie Smith be allowed to stay in the home of Mr. Reuben Southerland while Mr. Southerland was being licensed as a foster care home. The Court received the testimony of the Arkansas Department of Human Services that the home of Mr. Reuben Southerland was not licensed as a foster care home until November 1997. However, the Court is not bound by the policy of Arkansas Department of Human Services, and the Court finds that Mr. Reuben Southerland should be compensated for providing care to Charlie Smith.

. . . .

16. Jurisdiction of this cause is continued with a regular review hearing scheduled for June 3, 1998 at 2:00 p.m. At that time, the Court will enter another disposition. Further, all parties present have received notice of said hearing, and no further notice to this shall be required.

 It is undisputed that DHS policies dealing with foster-parent approval and training provide that board payments are paid to "approved foster parents." This DHS policy mirrors federal law governing foster-care services, which provides in pertinent part that foster-care maintenance payments may be made only on behalf of children placed in foster family homes. 42 U.S.C.S. § 672(b)(1) (1998). A foster family home is defined as a "foster family home for children which is licensed by the State in which it is situated or has been approved, by the agency of such State having responsibility for licensing homes of this type, as meeting the standards established for such licensing." 42 U.S.C.S. § 672(c)(1) (1998). The juvenile court order in the instant case was directly contrary to these statutory requirements and DHS policies, and it provided no satisfactory justification for ignoring them. Consequently, we reverse and dismiss the juvenile court order because under the circumstances of this case the court lacked statutory authority to order appellant, the Arkansas Department of Human Services, to pay Mr. Southerland $3,325. Of course, he would be due payment beginning with the date of the completion of the licensing/certification process in November 1997.

There are two dissenting opinions in this case. One would dismiss, finding that the order appealed from is not final and

appealable. The other would affirm the chancellor's order based upon the insufficiency of appellant's abstract, or in the alternative, for failure to preserve the arguments for appeal. We disagree with both dissents for the following reasons.

■ Rule 2(a)2 of the Rules of Appellate Procedure—Civil provides that an appeal may be taken from "[a]n order which in effect determines the action and prevents a judgment from which an appeal might be taken, or discontinues the action." Here, the juvenile judge merely provided for a subsequent hearing for periodic review and enforcement, not for continuation of the matter at hand. The order appealed from put the court's directive into execution and ended the litigation. It was therefore final and appealable.

■ Rule 4-2(b)(2) of the Rules of the Supreme Court and Court of Appeals (effective for briefs filed through July 1, 1998) provides that "[i]f the Court finds the abstract to be flagrantly deficient, or to cause an unreasonable or unjust delay in the disposition of the appeal, the judgment or decree may be affirmed for noncompliance with the Rule." Examples of flagrant deficiencies include instances ranging from the omission of documents or materials that are necessary to a clear understanding of the argument presented, *see, e.g., Collins v. State,* 324 Ark. 322, 920 S.W.2d 846 (1996), to instances in which verbatim copies of the transcript are submitted as an abstract, *see, e.g., Muldrow v. Douglass,* 316 Ark. 86, 870 S.W.2d 736 (1994). Any deficiencies in appellant's abstract do not rise to these levels and are not so flagrant as to make a decision "well nigh impossible." *See Haynes v. State,* 313 Ark. 407, 855 S.W.2d 313 (1993). Moreover, as more fully quoted below, we think the attorney's objection at trial was sufficient to preserve the points argued on appeal:

> For purposes of the record and to preserve the record, I object on behalf of the Arkansas Department of Human Services to all the Court has ordered regarding the money. The main basis of the objection is the fact that the foster care home was not properly licensed until November and part of that was that the necessary documents were not provided by Mr. Southerland. The only reason I am voicing this objection is that I'm not sure really what the Department's position will be, but I know I must

preserve the record if I intend to object. I know there are different funding resources which I am woefully inadequate in being able to explain about the funding sources, but I do want to just preserve the record.

Reversed and dismissed.

ROBBINS, C.J., and JENNINGS, J., agree.

CRABTREE, J., concurs.

ROGERS and MEADS, JJ., dissent.

TERRY CRABTREE, Judge, concurring. I concur in the final disposition of this case but cannot agree with some of the reasoning contained in the majority opinion. In particular, I agree completely with the discussion in Judge Rogers's dissenting opinion regarding the effect of DHS policy on the authority of the court to fashion services for the child. However, I cannot agree with Judge Rogers in that the payments ordered by the court were for family services. The trial court clearly ordered that payments in the amount of board payments were to be made from "the regular board payment funding source." As Judge Stroud points out, that regular board payment funding source is tied directly to federal funds and statutes. But for the trial court's order directing funds to be paid out of that specific fund, I would join the dissenting judges. However, because I feel the outcome is correct, I join in the majority.

JUDITH ROGERS, Judge, dissenting. I respectfully dissent from the majority opinion and, with due regard, disagree with one aspect of the dissenting opinion of the honorable Judge Meads. Before addressing my concerns and the findings of the other opinions, I believe that it is necessary to clarify some undisputed facts in this case that were omitted by the majority opinion.

DHS was relieved from providing services to the father of the juvenile, Charlie Smith, on October 9, 1996. Based on the limited abstract before us, it appears that DHS had been responsible for the care and custody of Charlie since October 9, 1996. We are unable to determine the extent of DHS's responsibilities concerning Charlie because appellant's abstract does not provide the hearing on July 9, 1997, or August 7, 1997. There is also some

indication in the record that these parties were in court in June or May of 1997, but again, we do not have an abstract that reflects that hearing.

Charlie left the foster home of the Morris's and moved in with appellee in January of 1997. In June, DHS *requested* that Charlie be placed with appellee even though DHS knew that appellee had not been approved for foster care. Apparently, in June the court approved DHS's request to place Charlie with appellee. The abstract does not contain the hearing or order which allowed this placement, so I am unable to determine what the circumstances were surrounding that placement or if board payments were ordered at that time. The judge did note, during the hearing on December 11, 1997, that he believed the issue of board payments had previously been resolved. However, based on this abstract, I am unable to determine what actions occurred previous to the December 11, 1997, hearing. Our law has long been established that where the proceedings had before the trial court are not preserved and brought forward in the record, the appellate court must presume that the absent material was sufficient to support the trial court's findings and decree. *Keathley v. Diversified Fastener & Tool Co.*, 2 Ark. App. 59, 616 S.W.2d 755 (1981).

First, I would affirm this case because appellant's abstract is flagrantly deficient. From the above recitation, it is clear that there is pertinent information and evidence necessary for the resolution of this case that has not been abstracted. The appellant carries the burden of producing an abstract that is an impartial condensation, without comment or emphasis, of material parts of the pleadings, proceedings, facts, documents, and other matters in the record as are necessary to an understanding of all questions presented on appeal. *Hooker v. Farm Plan Corp.*, 331 Ark. 418, 962 S.W.2d 353 (1998); Ark. Sup. Ct. R. 4-2(a)(5). Also, it is the appellant's burden to abstract the record to demonstrate error, and the appellate court will not go to the record to determine whether reversible error occurred. *McPeek v. White River Lodge Enters.*, 325 Ark. 68, 924 S.W.2d 456 (1996). Although the majority believes that the abstract is not deficient, it is obvious that for a meaningful review of this case the prior hearings involving the parties are necessary for a clear understanding of the issues before us.

Second, a statement set out in the majority opinion needs clarification. The majority states in its opinion that "DHS contended therefore that it did not 'place' Charlie in Mr. Southerland's house." There is no reference or statement in the abstract before this court that DHS made that contention below. That statement by DHS is found for the first time in its argument on appeal. We cannot review arguments made for the first time on appeal. *Dellinger v. First Nat'l Bank of Russelllville*, 333 Ark. 460, 970 S.W.2d 223 (1998). Because the abstract does not show that this point was argued before the juvenile court, we cannot address it here. In fact, it is clear from the abstract of the juvenile court proceedings that appellant never denied requesting the placement of Charlie with appellee.

Third, I dissent strongly from the majority's finding that:

[t]he juvenile court order in the instant case was directly contrary to these statutory requirements and DHS policies, and it provided no satisfactory justification for ignoring them. Consequently, we reverse and dismiss the juvenile court order because under the circumstances of this case the court lacked statutory authority to order appellant, the Arkansas Department of Human Services, to pay Mr. Southerland $3,325.

The majority has reversed and dismissed this case on an issue that was not raised below by DHS. The only objection the abstract reveals to have been made by DHS below challenging the order to pay Mr. Southerland $3,325 was that Mr. Southerland's home was not properly licensed until November. After that objection, counsel clearly stated, "[t]he only reason I am voicing this objection is that I'm not sure really what the Department's position will be, but I know I must preserve the record if I intend to object." The abstract does not reflect any objection or argument that the juvenile court lacked the statutory authority to order DHS to pay Mr. Southerland or that the court's order was contrary to statutory requirements or DHS policy. It is well established that we do not reach arguments made for the first time on appeal, and we do not reverse for error not brought to the attention of the trial judge. *Silvey Cos. v. Riley*, 318 Ark. 788, 888 S.W.2d 636 (1994). I will not and cannot disregard our standard and limits of appellate review to reverse and dismiss this case on issues not raised below.

Even if DHS had preserved the issues that the majority finds constitute reversible error, I still would not agree with the majority's assessment of the law. The majority found that DHS policies provided that board payments are paid to "approved foster parents". The majority also found that the juvenile court provided no satisfactory justification for ignoring the statutory requirements and DHS policies and that the court lacked statutory authority to order DHS to pay appellee. The abstract does not contain the policy relied on by the majority; however, the supreme court has held that the juvenile court's orders do not have to comply with DHS policy. *See Arkansas Dept' of Human Servs. v. R.P.*, 333 Ark. 516, 970 S.W.2d 225 (1998); *Arkansas Dept' of Human Servs. v. Clark*, 304 Ark. 403, 802 S.W.2d 461 (1991). There is no provision in the juvenile code that arguably requires the juvenile court to fashion its orders within the policy guidelines of DHS. *Id.* As far as the juvenile court's statutory authority to require DHS to pay appellee for providing care for Charlie, I believe that the authority is found at Ark. Code Ann. section 9-27-303(19) (Repl. 1998). "Family services" includes relevant services, including, but not limited to: child care, cash assistance, or transportation provided to a juvenile. Ark. Code Ann. section 9-27-303(19) (Repl. 1998). The jurisdictions of the juvenile court and DHS overlap in numerous and varied areas. One such area involves family services. *See Arkansas Dept' of Human Servs. v. Clark, supra.* Under Ark. Code Ann. section 9-27-337(b)(1) (Repl. 1998), the juvenile court shall determine and shall include in its orders whether the case plan, services, and placement meet the special needs and best interests of the juvenile and whether the state has made reasonable efforts to provide family services. I believe under this statutory authority the juvenile court could order DHS to pay appellee the amount due for the care and services provided to Charlie for the period of time that DHS requested that Charlie be placed with appellee. Thus, assuming that the issue was preserved, I would affirm the juvenile court's order requiring DHS to reimburse or compensate appellee for $3,325.

Lastly, I agree with the law as cited by Judge Meads, but I disagree with her conclusion that this order is not a final appealable order. It is my view that the stay of that order distinguishes

this case and negates the need for the subsequent hearing that is alluded to in the trial court's order. Thus, if there is no subsequent hearing because appellant's obligation to pay has been stayed then the order is final.

Based on the fact that appellant's abstract is deficient I would affirm this case, and in the alternative, assuming the abstract was not deficient, I would affirm because of appellant's failure to preserve its arguments for appeal and because of DHS's attempt to raise arguments for the first time on appeal.

MARGARET MEADS, Judge, dissenting. Appellant Arkansas Department of Human Services (DHS) has appealed from the December 16, 1997, order of the Juvenile Division of Jefferson County Chancery Court. I would dismiss the appeal because I do not believe the order appealed from is a final, appealable order.

At the conclusion of the review hearing, the judge ordered that DHS pay the foster parent, Reuben Southerland, $3,325 for board payments from June through December 1997 and instructed Mr. Southerland to notify him if he did not receive the check by January 15. In the event Mr. Southerland did not timely receive payment, the judge announced, "We will appear in court on February 4." Paragraph 11 of the December 16 order provides:

> That in the event that Mr. Reuben Southerland does not receive the said payment of $3325.00 from ADHS by January 15, 1998, then and in that event, Mr. Boyd Ward, Assistant Director of Children and Family Services, shall appear before this Court on February 4, 1998, at 1:30 p.m. for a special hearing. That in the event that Mr. Reuben Southerland does receive the said check by January 15, 1998, then and in that event, Mr. Boyd Ward will not need to appear before this Court as there will be no special hearing on February 4, 1998.

Apparently no money has been paid, and payment of the judgment has been stayed pending this appeal.

An appeal may be taken from a final judgment or decree entered by the trial court. Ark. R. App. P.—Civ. 2(a)(1). To be appealable, an order, decree, or judgment must dismiss the parties from the court, discharge them from the action, or conclude their

rights to the subject matter in controversy. *Chancellor v. Chancellor*, 282 Ark. 227, 667 S.W.2d 950 (1984). The record must disclose a final adjudication of the matter in controversy between the parties for the appellate court to have jurisdiction. *State of Arkansas Office of Child Support Enforcement v. Morrison*, 318 Ark. 563, 885 S.W.2d 900 (1994). Even though the parties do not raise the issue of the appealability of an order, it is the duty of the appellate court to determine whether or not it has jurisdiction. *Associate Fin. Serv. Co. v. Crawford County Memorial Hospital*, 297 Ark. 14, 759 S.W.2d 210 (1988). The appellate court will not reach the merits of an appeal if the order appealed from is not final. *Wilburn v. Keenan Co.*, 297 Ark. 74, 759 S.W.2d 554 (1988).

Because the December 16 order calls for a subsequent hearing, it was not a final adjudication of the matter and thus was not an appealable order. Therefore, I would dismiss the appeal without reaching the merits.