The Honorable Jake Files State Representative 2208 N. 46th Terrace Fort Smith, AR 72904
Dear Representative Files:
I am writing in response to your request for my opinion regarding the possible use of "tasers"[1] at the Sebastian County Juvenile Detention Center (the "JDC"). You report that a JDC worker has asked you to pose the following question:
 The adult jail facility guards carry and use "tasers" for self defense. Is it legal for the County JDC officers to use a "taser" for situations of self defense?
RESPONSE
In my opinion, the administrator of a juvenile detention center can authorize the purely defensive use of tasers, subject to certain conditions set forth in the Juvenile Detention Standards drafted by the Juvenile Detention Facilities Review Commission, see Act 427 of 1989, and any further conditions imposed by the Criminal Detention Facilities Review Coordinator. See A.C.A. § 12-26-103. However, the propriety of using such measures in any particular case would depend upon the facts. In my opinion, from a constitutional standpoint, determining whether a particular use of a taser was warranted would most likely involve a substantive due process analysis under the Fourteenth Amendment, meaning that a court would inquire whether the use was impermissibly intended as punishment, as opposed to self-defense. With respect to adjudicated delinquents, as opposed to pretrial detainees, a court might alternatively conduct an analysis under the Eighth Amendment and Ark. Const. art. 2, § 9, inquiring not whether the use was intended as punishment, but rather whether the use was applied in an effort to maintain discipline or maliciously and sadistically to cause harm. With respect to possible criminal exposure, a court might further inquire whether any challenged use of a taser amounted to a justified use of force pursuant to A.C.A. § 5-2-603 et seq.
The Arkansas legislature enacted the Arkansas Juvenile Code, A.C.A. §9-27-301 et seq. (Repl. 1998 Supp. 2001), pursuant to the authority granted it by Amendment 67 of the Arkansas Constitution. This constitutional amendment defined jurisdiction of matters relating to juveniles and conferred such jurisdiction upon a newly created juvenile division of the then chancery court system.[2] Arkansas Department ofHuman Services v. Clark, 304 Ark. 403, 407, 802 S.W.2d 461, 463 (1991). With respect to punishment and discipline of juvenile defendants, the beneficent intentions underlying the Juvenile Code are reflected in A.C.A. § 9-27-302(3) (Supp. 2001), which sets forth the following purpose:
 To protect society more effectively by substituting for retributive punishment, whenever possible, methods of offender rehabilitation and rehabilitative restitution, recognizing that the application of sanctions which are consistent with the seriousness of the offense is appropriate in all cases.
This statement of purpose is consistent with the following pronouncement from Martin v. State, 213 Ark. 507, 513, 211 S.W.2d 116 (1948):
 [T]he more modern institutions have emerged, with a gradual recognition by the General Assembly that society gains more through reformation of juveniles than it does from punishing them. The entire purpose is one for moral recovery. A criminal charge is treated as evidence of delinquency when established. Felonious conduct and misdemeanors are not dealt with as such, but are considered only in determining what is best for the minor when all of the circumstances of birth, environment, opportunity, habit and demonstrated tendencies are measured.
Subsection 9-27-303(17) (Supp. 2001) of the Code defines the term "detention" as follows:
 "Detention" means the temporary care of a juvenile in a physically restricting facility, other than a jail or lock-up used for the detention of adults, prior to an adjudication hearing for delinquency or pending commitment pursuant to an adjudication of delinquency.
Subsection 9-27-303(30) (Supp. 2001) defines the term "juvenile detention facility" as follows:
 "Juvenile detention facility" means any facility for the temporary care of juveniles alleged to be delinquent, or adjudicated delinquent and awaiting disposition, who require secure custody in a physically restricting facility designed and operated with all entrances and exits under the exclusive control of the facility's staff, so that a juvenile may not leave the facility unsupervised or without permission.
This definition is repeated verbatim at A.C.A. §§ 5-54-101(13) and12-41-803(2) and in the uncodified Act 427 of 1989, §§ 1(f) and 2-1001(B). Subsection 6-20-104(a), which mandates providing educational services in such facilities, includes the following materially indistinguishable definition:
 As used in this section, unless the context otherwise requires," juvenile detention facility" means any facility operated by a political subdivision of the state for the temporary care of juveniles alleged to be delinquent, or adjudicated delinquent, who require secure custody in a physically restricting facility. Under § 9-27-330(a)(11), such facility must provide educational and other rehabilitative services to adjudicated delinquents who may be ordered by the court to remain in the juvenile detention facility for an indeterminate period not to exceed ninety (90) days.
Among the alternatives available to the court upon finding a juvenile to be delinquent are committing the juvenile to a youth services center, A.C.A. § 9-27-330(a)(1)(B)(i) (Supp. 2001), or ordering the juvenile to "remain in a juvenile detention facility for an indeterminate period not to exceed ninety (90) days." A.C.A. § 9-27-330(a)(11)(A)(i) (Supp. 2001). See Golden v. State, 341 Ark. 656, 658, 20 S.W.3d 801(2000) (discussing indeterminate sentence in youth services center, subject to condition that juvenile would remain in a juvenile detention center for up to 90 days if released from the youth services center before the age of 21).
Although the Code contains no provision directly addressing what self-defense measures an officer might employ in a juvenile detention facility, the legislature in 1989 did establish a Juvenile Detention Facilities Review Commission to develop guidelines for the operation of juvenile detention facilities. Act 427 of 1989.[3] The legislature has further established the office of Criminal Detention Facilities Review Coordinator, which is charged with establishing minimum standards for,inter alia, the operations of both criminal detention centers and juvenile detention facilities.[4] A.C.A. § 12-26-103. Section 12-26-105
of the Code further calls for the creation in each judicial district of a criminal detention facility review committee whose status is that of a state agency. Among the duties of each such committee is "to visit and inspect the criminal detention facilities and juvenile detention facilities for compliance with the standards as established under §12-26-103."
The Juvenile Detention Standards (the "Standards") drafted by the Juvenile Detention Facilities Review Commission contain no express provision either prohibiting or allowing the use of tasers by guards in self-defense. Section 6-1002 of the Standards provides in pertinent part:
 Written policies and procedures govern the availability control and use of chemical agents and related security devices. Chemical agents and related security devices are used only at the direction of the facility administrator or designee.
Section 6-1007 provides:
 No weapons are permitted in the secure section of the facility except in emergency situations. Secure weapon's [sic] lockers will be provided within the facility for storage of weapons.
Section 6-1012 provides:
 Written policies and procedures provide that instruments of restraint are never applied as punishment and are applied only with the approval of the facility administrator or designee.
Section 6-1013 provides in pertinent part:
 Written policies and procedures limit the use of physical force to instances of self-protection, protection of the juvenile or others, prevention of property damage, prevention of escapes and in accordance with appropriate statutory authority.
Finally, subsection 13-1001(G) declares that any detained juvenile has the right "[n]ot to be subject to corporal or unusual punishment, humiliation, mental abuse or punitive interference with the daily functions of living such as eating or sleeping." Based upon these statutes, it appears that a facilities administrator or his designee might indeed approve a policy of making tasers available on an emergency basis for the purpose of self-defense.
However, a facility that adopted the use of tasers against juveniles for any purpose would still be subject to federal constitutional restrictions and to criminal statutes regarding the permissible use of force. There is some question as to what standard applies to the use of force in juvenile facilities — the Eighth or Fourteenth Amendment of the U.S. Constitution. Several factors might bear on this issue. As noted above, a juvenile detention facility houses both pretrial detainees and adjudicated delinquents. In Bell v. Stigers, 937 F.2d 1340, 1381 n. 4 (8th Cir. 1991), the Eighth Circuit Court of Appeals acknowledged that pretrial detainees and convicted prisoners are subject to different standards of constitutional protection from the use of force by officials:
 We note that protection against cruel and unusual punishment as provided under the Eighth Amendment applies only to convicted prisoners. Whitley v. Albers, 475 U.S. 312, 318, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986) (quoting Ingraham v. Wright, 430 U.S. 651, 664, 97 S.Ct. 1401, 1408-09, 51 L.Ed.2d 711 (1977)). However, as stated by the Supreme Court, "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979).
As a general rule, then, a convicted prisoner is entitled to limited protection against official violence under the Eighth Amendment. InIngraham, the U.S. Supreme Court defined the scope of this protection:
 Prison brutality . . . is "part of the total punishment to which the individual is being subjected for his crime and, as such, is a proper subject for Eighth Amendment scrutiny.". . . Even so, the protection afforded by the Eighth Amendment is limited. After incarceration, only the "`unnecessary and wanton infliction of pain,'" Estelle v. Gamble, 429 U.S., at 103, quoting Gregg v. Georgia, 428 U.S., at 173, constitutes cruel and unusual punishment forbidden by the Eighth Amendment.
430 U.S. at 669-70 (footnote omitted). In Hudson v. McMillian,503 U.S. 1, 5 (1992), the Court elaborated on this standard as follows:
 In Whitley v. Albers, 475 U.S. 312 (1986), the principal question before us was what legal standard should govern the Eighth Amendment claim of an inmate shot by a guard during a prison riot. We based our answer on the settled rule that "`the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Id., at 319 (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977)) (internal quotation omitted).
The Court further remarked that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."503 U.S. at 6-7. Accord Cowans v. Wyrick, 862 F.2d 697, 699 (8th Cir. 1988).
However, I strongly doubt a court would apply the just recitedEighth Amendment standard to any resident of a juvenile facility given that an adjudication of delinquency is not considered the equivalent of a conviction — a prerequisite to application of the Eighth Amendment. SeeWhitley, 475 U.S. at 318. As the Arkansas Supreme Court recently noted inVanesch v. State, 343 Ark. 381, 389-90 (2001):
 This court has held that a finding of juvenile delinquency is not considered a "conviction." See Snyder v. State, supra, [332 Ark. 279, 283, 965 S.W.2d 121 (1998)]; Munhall v. State, 337 Ark. 41, 986 S.W.2d 863 (1999); Rogers v. State, 260 Ark. 232, 538 S.W.2d 330
(1976). [T]he General Assembly has recognized that a juvenile delinquency adjudication is different from a conviction. See, e.g., Ark. Code Ann. § 16-97-104 (Supp. 1997) ("Proof of prior convictions, both felony and misdemeanor, and proof of juvenile adjudications shall follow the procedures outlined in §§ 5-4-504-5-4-504."); Ark. Code Ann. § 5-73-130(a) (Repl. 1997) ("Whenever a person under eighteen (18) years of age is unlawfully in possession of a firearm, the firearm shall be seized and, after an adjudication of delinquency or a conviction, shall be subject to forfeiture."); Snyder, supra. Furthermore, it appears that the General Assembly also recognizes a difference between an adjudication or finding of guilt and an adjudication of delinquency. See, e.g., Ark. Code Ann. § 12-12-1109(a) and (b) (1997), ("A person who is adjudicated guilty or adjudicated delinquent for a sex offense, a violent offense, or a repeat offense on or after August 1, 1997, shall have a deoxyribonucleic acid (DNA) sample drawn. . . .); see also, Ark. Code Ann. § 9-27-309(c) (Repl. 1998) ("Records of juveniles who are designated as extended juvenile jurisdiction offenders shall be kept for ten (10) years after the last adjudication of delinquency, date of plea of guilty or nolo contendere, or finding of guilt as an adult or until the juvenile's twenty-first birthday, whichever is longer.) Such a finding would comport with the purpose of the juvenile code, which is, in part, to rehabilitate instead of punish young offenders. See Ark. Code Ann. § 9-27-302(3) (Supp. 1999). This Court has reiterated that
 [J]uvenile offenders are not adult offenders and are not treated as such. . . . [T]he entire process and the purpose of the juvenile code set it apart from the criminal code and many of the considerations involved in dealing with juvenile offenders are significantly different.
 L.H. v. State, 333 Ark. 613, 973 S.W.2d 477 (1998) (citing Robinson v. Shock, Supt., 282 Ark. 262, 265, 667 S.W.2d 956, 958 (1984)).
 A juvenile delinquency adjudication is not a conviction of a felony, and it is not a finding of guilt of a felony. A prior juvenile delinquency adjudication cannot be used for sentence enhancement under the habitual offender law.
The question remains, then, precisely what category of constitutional protection a detained juvenile enjoys. Although neither the U.S. nor the Arkansas Supreme Court has yet resolved this issue, the Eighth Circuit Court of Appeals has ruled that the applicable standard is that of substantive due process under the Fourteenth Amendment:[5]
 In memoranda of law filed with the district court the parties agreed that the Due Process Clause of the Fourteenth Amendment, and not the Cruel and Unusual Punishments Clause of the Eighth Amendment, is the appropriate measuring stick for evaluating conditions in a juvenile facility. The due process standard was applied by the district court, which, quoting with approval Judge Ferguson's concurring opinion in Gary H. v. Hegstrom, 831 F.2d 1430, 1437 n. 3 (9th Cir. 1987), noted that "`[t]he `evolving standards of decency' against which courts evaluate the constitutionality of . . . conditions certainly provide greater protection for juveniles than for adults.'" See Jt. App. at 194. We note, as did the district court, that the Supreme Court has not yet articulated the appropriate federal standard by which to judge conditions in state juvenile facilities. See Ingraham v. Wright, 430 U.S. 651, 669 n. 37, 97 S.Ct. 1401, 1411 n. 37, 51 L.Ed.2d 711 (1977) (expressly reserving the question whether the Eighth Amendment applies to juvenile institutions). We agree with the court that, by virtue of plaintiffs' status as pretrial detainees, the more protective Fourteenth Amendment, and not the Eighth Amendment, applies. See Boswell v. Sherburne County, 849 F.2d 1117, 1120-21 (8th Cir. 1988) (citing Bell v. Wolfish, 441 U.S. 520, 523, 99 S.Ct. 1861, 1865-66, 60 L.Ed.2d 447 (1979)); see also Hegstrom, 831 F.2d at 1437 (Ferguson, J., concurring) ("Where . . . an institution is noncriminal and nonpenal, allegations of unconstitutional conditions of confinement are governed by the more protective standard of the Fourteenth Amendment, rather than the Eighth Amendment."); Santana v. Collazo, 714 F.2d 1172, 1179 (1st Cir. 1983), cert. denied, 466 U.S. 974, 104 S.Ct. 2352, 80 L.Ed.2d 825 (1984) ("[J]uveniles . . . who have not been convicted of crimes, have a due process interest in freedom from unnecessary bodily restraint which entitles them to closer scrutiny of their conditions of confinement than that accorded convicted criminals.").
 In applying the due process standard to juveniles, we cannot ignore the reality that assessments of juvenile conditions of confinement are necessarily different from those relevant to assessments of adult conditions of confinement. See Santana, 714 F.2d at 1179. Juveniles subject to pretrial detention have "not as yet had a `judicial determination of probable cause which the Fourth Amendment requires as a prerequisite to extended restraint of liberty following arrest[,]'" United States ex rel. Martin v. Strasburg, 513 F. Supp. 691, 714
(S.D.N.Y. 1981) (quoting Gerstein v. Pugh, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975)), aff'd, 689 F.2d 365 (2d Cir. 1982), rev'd sub nom. Schall v. Martin, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984); are, in some instances, before the court on charges in unverified petitions, e.g., delinquency petitions filed on information and belief, id.; and are in a system whose purpose is rehabilitative, not penal, in nature. See Santana, 714 F.2d at 1178
(citing, among other cases, Pena v. New York State Div. For Youth, 419 F. Supp. 203, 206 (S.D.N.Y. 1976) (objectives of juvenile justice system are to provide measures of guidance and rehabilitation)). In addition, juveniles are frequently detained for reasons entirely separate from those associated with adjudication of charges. Some are detained as a result of neglect or abusive home environments and are held in protective custody, e.g., are "status offenders"; some are runaways; some are simply undisciplined. For these reasons, we conclude that, as a general matter, the due process standard applied to juvenile pretrial detainees should be more liberally construed than that applied to adult detainees.
A.J. by L.B. v. Kierst, 56 F.3d 849, 853 (8th Cir. 1995). See alsoJackson v. Johnson, 118 F. Supp. 2d 278, 286-87 (N.D.N.Y. 2000) (holding that substantive due process protections of the Fourteenth Amendment apply even to adjudicated juvenile delinquents).
As the foregoing should suggest, it may well be that the same constitutional standard applies to adjudicated juvenile delinquents and pretrial detainees in an Arkansas juvenile facility. Assuming the applicable standard is that of substantive due process under theFourteenth Amendment, the pertinent test will be whether the challenged conduct amounts to punishment, Bell v. Wolfish, 441 U.S. 520, 535 (1979) — presumably as opposed to the rehabilitation generally recited as the goal of juvenile detention. As the Court noted in Wolfish with respect to the particular category of pretrial detainees:
 Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be "cruel and unusual" under the Eighth Amendment. The Court recognized this distinction in Ingraham v. Wright, 430 U.S. 651, 671-672, n. 40, 97 S.Ct. 1401, 1412-1413 n. 40, 51 L.Ed.2d 711 (1977):
 "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. See United States v. Lovett, 328 U.S. 303, 317-318, 66 S.Ct. 1073, 1079-1080, 90 L.Ed. 1252 (1946). . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment."
441 U.S. at 537, n. 16. See Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989) ("It is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."). To the extent an adjudicated juvenile delinquent warrants the same protections as a pretrial detainee — a conclusion implicit in various of the pronouncements recited above — this passage would appear to apply to all inmates of a juvenile facility.
Although I have found no authority directly on point, I do not believe that adopting the defensive use of such a weapon would be deemed unconstitutional, particularly in light of the fact that self-defense, which is expressly approved in section 1013 of the Standards, by its very definition does not qualify as punishment, which is expressly disapproved in subsection 13-1001(G) of the Standards. However, determining the propriety of using a taser in any particular instance will obviously involve a factual inquiry of the sort that I am neither equipped nor authorized to undertake. I can only note that any impermissible use might give rise to civil liability under the constitutional standard discussed above and to criminal liability under the statutes regulating the use of violence against others. With respect to the latter possibility, I will simply advise you that the following statutes may apply:
 (a) Conduct which would otherwise constitute an offense is justifiable when it is required or authorized by law or by a judicial decree or is performed by a public servant or a person acting at his direction, in the reasonable exercise or performance of his official powers, duties, or functions.
(b) The justification afforded by this section applies:
 (1) When the actor reasonably believes his conduct is required or authorized by the judgment or direction of a competent court or tribunal or in the lawful execution of legal process, notwithstanding lack of jurisdiction of the court or defect in the legal process; or
 (2) When the actor reasonably believes his conduct is required or authorized to assist a public servant in the performance of his duties, notwithstanding that the public servant has exceeded his legal authority.
A.C.A. § 5-2-603.
 (a) Conduct which would otherwise constitute an offense is justifiable when:
 (1) The conduct is necessary as an emergency measure to avoid an imminent public or private injury; and
 (2) The desirability and urgency of avoiding the injury outweigh, according to ordinary standards of reasonableness, the injury sought to be prevented by the law proscribing the conduct.
 (b) Justification under this section shall not rest upon considerations pertaining to the morality and advisability of the statute defining the offense charged.
 (c) If the actor is reckless or negligent in bringing about the situation requiring a choice of evils or in appraising the necessity for his conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.
A.C.A. § 5-2-604.
 The use upon another person of physical force that would otherwise constitute an offense is justifiable under any of the following circumstances:
* * *
 (2) A warden or other authorized official of a correctional facility may use nondeadly physical force to the extent reasonably necessary to maintain order and discipline.
A.C.A. § 5-2-605.
 (a) A person is justified in using physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force that he reasonably believes to be necessary. However, he may not use deadly physical force except as provided in § 5-2-607.
 (b) A person is not justified in using physical force upon another person if:
 (1) With purpose to cause physical injury or death to the other person, he provokes the use of unlawful physical force by the other person; or
 (2) He is the initial aggressor; but his use of physical force upon another person is justifiable if he in good faith withdraws from the encounter and effectively communicates to the other person his purpose to do so, and the latter continues or threatens to continue the use of unlawful physical force; or
 (3) The physical force involved is the product of a combat by agreement not authorized by law.
A.C.A. § 5-2-606.
 (a) A person is justified in using deadly physical force upon another person if he reasonably believes that the other person is:
 (1) Committing or about to commit a felony involving force or violence;
(2) Using or about to use unlawful deadly physical force
* * *
 (b) A person may not use deadly physical force in self-defense if he knows that he can avoid the necessity of using that force with complete safety:
 (1) By retreating, except that a person is not required to retreat if he is in his dwelling and was not the original aggressor, or if he is a law enforcement officer or a person assisting at the direction of a law enforcement officer; or
 (2) By surrendering possession of property to a person claiming a lawful right thereto.
A.C.A. § 5-2-607.
 (a) A law enforcement officer is justified in using nondeadly physical force, or threatening to use deadly physical force, upon another person when he reasonably believes it necessary:
 (1) To effect an arrest or to prevent the escape from custody of an arrested person unless the officer knows that the arrest is unlawful; or
 (2) To defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape.
 (b) A law enforcement officer is justified in using deadly physical force upon another person when he reasonably believes that it is necessary:
 (1) To effect an arrest or to prevent the escape from custody of an arrested person whom he reasonably believes has committed or attempted to commit a felony; or
 (2) To defend himself or a third person from what he reasonably believes to be the use or imminent use of deadly physical force.
A.C.A. § 5-2-610.
 A correctional officer, employed by the Arkansas Department of Correction or by a private contractor in a correctional facility housing inmates for the Arkansas Department of Correction, (or a city or county correctional officer employed in a correctional facility or jail) is justified in using deadly physical force when and to the extent that he reasonably believes it necessary to prevent the escape of a prisoner from a correctional facility, or escape from custody of correctional officers outside the correctional facility for any purpose unless the correctional officer knows or reasonably should know that the prisoner is charged with or has been convicted of only a misdemeanor, in which case only nondeadly physical force may be used.
A.C.A. § 5-2-613.
 No persons shall be civilly liable for actions or omissions intended to protect themselves or others from personal injuries during the commission of a felony.
A.C.A. § 5-2-621.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] A taser is "a small gunlike device that fires small electric darts to incapacitate an individual temporarily." Random House Webster'sUnabridged Dictionary (2d ed. 1999).
[2] By operation of Ark. Const. amend. 80, chancery and circuit courts have since been merged into a single category of circuit courts.
[3] For reasons that are not entirely clear, Act 427 was never codified. Pursuant to subsection (g) of Act 427, the Juvenile Detention Facilities Review Commission automatically dissolved upon its final approval of guidelines. Compare former A.C.A. § 12-27-104, which was repealed by Act 1185 of 2001 (calling for the creation of a Criminal Detention Facilities Review Commission, which would dissolve automatically upon its approval of guidelines for the operation of adult detention facilities).
[4] Despite this grant of authority to the Coordinator over the operation of detention facilities, the legislature apparently felt that confusion might arise unless it repealed the former A.C.A. § 12-26-104, which charged the Criminal Detention Facilities Review Commission with the task of adopting guidelines for the operation of such facilities. The title of Act 1185 of 2001 reads: "AN ACT TO REPEAL OBSOLETE LANGUAGE IN ORDER TO PROVIDE THE CRIMINAL DETENTION FACILITIES REVIEW COORDINATOR THE AUTHORITY TO ESTABLISH MINIMUM STANDARDS FOR DETENTION FACILITIES; AND FOR OTHER PURPOSES." The subtitle reads: "TO PROVIDE THE CRIMINAL DETENTION FACILITIES REVIEW COORDINATOR THE AUTHORITY TO ESTABLISH MINIMUM STANDARDS FOR DETENTION FACILITIES."
[5] In Williams-El v. Johnson, 877 F.2d 224, 228-29 (8th Cir. 1989), the court distinguished substantive from procedural due process as follows:
 Procedural due process is about when and how the state may deprive a person of property or liberty; it involves the procedures a state must follow before a right is taken away. Substantive due process, on the other hand, proscribes "certain government actions regardless of the fairness of the procedures used to implement them" Daniels [v. Williams, 474 U.S. 327 (1986)], supra, 474 U.S. at 331, 106 S.Ct. at 665.